UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CALVIN M.,

        Plaintiff,

    v.                                                                                                    **DECISION AND ORDER**

                                                                                                                    20-CV-6873S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.        Plaintiff Calvin M.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for supplemental security income under Title XVI of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed his application with the Social Security Administration on December 12, 2014.  Plaintiff alleged disability beginning December 11, 2013, due to labral tear/degenerative disease of the left shoulder; degenerative disease of the lumbar spine; obesity; learning disorder/impaired cognition; attention deficit hyperactivity disorder ("ADHD"); depressive disorder; impulse control disorder.  Plaintiff's application was denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

        3.        On March 14, 2017, ALJ John Costello held a hearing at which Plaintiff—represented by counsel—and Vocational Expert Dawn Blythe appeared and testified.

---

[1]In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

(R.[2] at 34-67, 574-607.)  At the time of the hearing, Plaintiff was 36 years old with limited education (R. at 430, 27).  He had no past relevant work (R. at 430, 27).

4. The ALJ considered the case *de novo* and, on June 22, 2017, issued a written decision denying Plaintiff's application for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he sought judicial review challenging the Commissioner's final decision, Calvin M. v. Commissioner, No. 18CV6645 (R. at 512).

5. Magistrate Judge William Carter ordered remand of this decision to have the ALJ evaluate evidence and reconsider the Plaintiff's RFC (R. at 512).  Judge Carter found that the ALJ impermissibly concluded opinions were entitled to weight based on their consistency with the RFC, specifically Dr. Yu-Ying Lin's 2015 and 2016 opinions (R. at 519-20, 517-18, 521).  Judge Carter held that the ALJ impermissibly formulated the mental RFC prior to assessing the opinion evidence and weighed that evidence based upon its consistency with the mental RFC (R. at 522).

6. The Appeals Council vacated the June 22, 2017, ALJ decision and ordered the ALJ consistent with Magistrate Judge Carter's decision (R. at 528).

7. On May 4, 2020, the ALJ conducted a telephone hearing at which Plaintiff and Vocational Expert Lois Szollosy appeared and testified (R. at 442-77).

8. The ALJ considered the case *de novo* and, on July 29, 2020, issued a written decision again denying Plaintiff's application for benefits.

---

[2]Citations to the underlying administrative record are designated as "R."

9. Plaintiff then filed the current action, challenging the Commissioner's final decision.[3] (Docket No. 1.)

10. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 10, 11.) Plaintiff filed a response on March 1, 2022, stating that a reply was unnecessary (Docket No. 12), at which time this Court took the Motions under advisement without oral argument. For the reasons that follow, Plaintiff's Motion is **denied**, and Defendant's Motion is **granted**.

11. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

12. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen,

---

[3]The ALJ's July 29, 2020, decision became the Commissioner's final decision by operation of 42 U.S.C. §§ 405(g), 1383(c)(3).

859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

13.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

14.    The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform

4

>   his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

15.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

16.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity. (R. at 430, 27.)  At Step Two, the ALJ found that Plaintiff has the following severe impairments:  labral tear/degenerative disease of the left shoulder; degenerative disease of the lumbar spine; obesity; learning disorder/impaired cognition; attention deficit hyperactivity disorder ("ADHD"); depressive disorder; impulse control disorder. Id. at 419; 18.  At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.

17. Next on remand, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work, limited to frequent reaching, handling, and fingering with the upper extremities; he would be limited to simple routine tasks, typical of unskilled work; and work would be limited to low-stress work, defined as work involving only occasional decision-making (R. at 421; cf. R. at 23 (original RFC)).

18. At Step Four, the ALJ found Plaintiff had no past relevant work. (R. at 430.) At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 431-32.) Finding that Plaintiff could not perform substantially all the requirements of medium work, the ALJ posed hypotheticals to the vocational expert of a claimant like Plaintiff in age, education, and job experience. The expert opined on remand that the hypothetical claimant could perform such jobs as assembler and metal furniture assembler (R. at 431; cf. R. at 28, vocational expert concluded the hypothetical claimant could perform as laundry laborer or auto detailer, both medium exertion jobs). Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 431, 432.)

19. Plaintiff argues that the RFC determination is not supported by substantial evidence because the mental RFC was not supported by substantial evidence and the physical RFC lacked support both findings due to the weighing of medical opinions in the record. For the reasons that follow, these arguments are rejected.

20. Plaintiff contends he had "a well-documented history of psychiatric and cognitive difficulties after being hit in the head with a butcher knife to unconsciousness by his mother and shot in the head with a BB gun as a child" (Docket No. 10, Pl. Memo.

at 21).  He notes that all but two of his mental health opinions in the record found Plaintiff would be off task 25-50% of an 8-hour workday (id.).

21. On his mental RFC, Plaintiff argues that it is based only upon the February 2015 opinion of Dr. Yu-Ying Lin, Ph.D. (R. 265-69, 427-28; Docket No. 10, Pl. Memo. at 7), which the ALJ gave great weight while giving little weight to Dr. Lin's later opinion (R. at 325-30) and to the opinions of other medical sources (R. at 427-28, 428-30; Docket No. 10, Pl. Memo. at 22-27).  Plaintiff calls Dr. Lin's 2015 opinion an outlier (Docket No. 10, Pl. Memo. at 21, 23; see id. at 27 ("vague terms used in Dr. Lin's February 2015 opinion").

22. Defendant reviewed the mental health opinions and found support for the ALJ's evaluation of these opinions (Docket No. 11, Def. Memo. at 11-21).

23. Plaintiff's argument calls for review of the medical opinions in the record and whether Dr. Lin's 2015 opinion was an outlier.

24. In 2014, Dr. Kavitha Finnerty, Ph.D., found that Plaintiff had a moderate limitation in maintaining attention and concentration for rote tasks and regularly attend to a routine and maintain a schedule (R. at 350).  The ALJ gave this opinion only partial weight, finding it was rendered on overly broad restrictive categories and was rendered months before his applications, hence had limited probative value (R. at 430).

25. Licensed Social Worker Laura Hayton-Oechsle in November 2014 (before these applications) found Plaintiff had moderately limited capacity to follow, understand, and remember simple instructions; perform simple and complex tasks independently; maintain attention and concentration for rote tasks; and perform low stress and simple tasks (R. at 345).  In May 2015 (after submission of the applications) Hayton-Oechsle

found Plaintiff was moderately limited in following instructions, maintaining attention and concentration, regularly attending to a routine, and maintaining a schedule (R. at 333). The ALJ, however, gave these opinions little weight because Ms. Hayton-Oechsle rendered the conclusion that Plaintiff is unable to work (R. at 428). The ALJ objected that the extensive degree of restriction was not supported by the medical record including Ms. Hayton-Oechsle's treatment notes (R. at 428-29).

26.     In February 2015, Dr. Lin conducted a state agency consultative psychiatric evaluation of Plaintiff and found that Plaintiff could understand and follow simple directions and instructions while mildly limited in maintaining attention and concentration (R. at 266, 268). Dr. Lin found that Plaintiff's attention and concentration appeared to be intact (R. at 267). Dr. Lin observed that Plaintiff had a neutral mood and dysphoric affect (R. at 267).

27.     The ALJ gave this opinion great weight finding it consistent with the medical record, recognizing that Plaintiff had meaningful but not profound degree of restriction, retaining the capacity to perform basic mental work-related activities (R. at 428).

28.     In July 2016, Dr. Lin reevaluated Plaintiff and found that he was moderately limited in completing complex tasks and maintaining attention and concentration for rote tasks (R. at 328, 327). Dr. Lin then concluded that Plaintiff could work a 40-hour week (R. at 326; see Docket No. 11, Def. Memo. at 12) with reasonable accommodations (R. at 326). Dr. Lin examined Plaintiff and found that he was abnormal for expressive language, appearing to be poor (R. at 328). Dr. Lin states that Plaintiff's attention and concentration was normal (R. at 328). Dr. Lin observed that Plaintiff had a dysthymic mood and

dysphoric affect, with below average cognitive functioning and poor insight and judgment (R. at 328).

29.     The ALJ gave partial weight to Dr. Lin's 2016 opinion, finding some support for it in the record as to Plaintiff's ability to perform complex tasks but lacking substantial evidence for profound restrictions for maintaining attention for rote tasks (R. at 428).

30.     Finally in February 2017, Dr. Satavathy Sarakanti and John Finn, LMHC, found that Plaintiff was unable to engage in full-time competitive employment, with limitations in areas of attention, focus, and follow through (R. at 354, 357). Dr. Sarakanti found that Plaintiff's focus and concentration were poor (R. at 354). The ALJ, however, gave this opinion little weight because the restrictions were not fully supported by substantial evidence of record (R. at 429). The ALJ observed that contemporaneous progress notes for Plaintiff showed that he improved in 2017 (R. at 429).

31.     Plaintiff terms Dr. Lin's 2015 evaluation to be an outlier to the doctor's later opinion and the opinions of other medical sources (Docket No. 10, Pl. Memo. at 23). He argues that the ALJ should not rely heavily on a consultative examiner's single examination (id., quoting Estrella v. Berryhill, 925 F.3d 90, 98 (2d Cir. 2019)).

32.     Defendant argues that Plaintiff identifies no error in assessing Dr. Lin's opinions (Docket No. 11, Def. Memo. at 11). Defendant noted the consistency of the 2015 opinion with Plaintiff's capacity to perform basic work-related activities and argues that the 2015 opinion is consistent with Dr. Lin's 2016 opinion that concluded Plaintiff could work a 40-hour week (id. at 11-12).

33.     Addressing Dr. Lin's opinions, Plaintiff's limitations in maintaining attention and concentration are not changed from 2015 to the next year. Dr. Lin found in both

9

examinations that Plaintiff's attention and concentration appeared to be intact (R. at 267, 328).  Thus, the difference in the 2015 and 2016 opinions comes from the formats of the respective assessment forms.  The 2015 assessment was in the Social Security format and the 2016 was a county employability assessment.  The 2015 medical source statement used Social Security limitation categories (mild, moderate limitation, R. at 268).  The 2016 county form gave three categories of functional limitations:  normal functioning (with no evidence of limitation); moderately limited ("unable to function 50% of the time"); and very limited ("unable to function 75% or more of the time") (R. at 327, 428; see Docket No. 11, Def. Memo. at 12 (noting county's "checkbox form that provided a stark choice between indicating no evidence of any limitation . . . or finding that an individual could not perform that activity for 50 percent of the time")).  The more severe evaluation in 2016 is due to the limitation of the form.

34.     Dr. Finnerty's March 2014 opinion was rendered before Plaintiff's December 2014 application and is of limited probative value.  The ALJ thus properly gave limited value to this pre-application opinion.

35.     Ms. Hayton-Oechsle also provided assessments on county employability forms, with this version having three revised categories for limitations:  normal functioning (no evidence of limitation); moderately limited ("unable to function 10-25% of the time"); and very limited ("unable to function 25% or more of the time"), as well as an option for insufficient data (R. at 345, 333).

36.     Defendant argues that Dr. Sarakanti submitted a check box form that, under Second Circuit law, the ALJ may give little weight where the opinions offered little or

nothing regarding corroborating clinical findings and diagnostic results (Docket No. 11, Def. Memo. at 18-19).

37. Cases within this Circuit (including from this Court, Cory S. v. Comm'r, No. 19CV6608, 2021 WL 508082, at *6 (W.D.N.Y. Feb. 11, 2021) (Skretny, J.)) differ on the acceptability of check box forms from treating physicians reporting their opinions. As found in Cory S., supra, 2021 WL 508082, at *6, and the cases cited therein, doctors may use those forms to express their opinions of a claimant's condition.

38. Reliance on such forms for medical opinions have been rejected, however, where the forms merely "offer little or nothing with regard to clinical findings and diagnostic results" or are inconsistent with findings in the doctor's own notes, Heaman v. Berryhill, 765 F. App'x 498, 501 (2d Cir. 2019) (summary Order); Halloran v. Barnhart, 362 F.3d 28, 31 n.2 (2d Cir. 2004) (standardized form held only marginally useful, critiquing the form). Mere use of a check box form provides a "good reason" for giving the treating physician's opinions less weight, Heaman, supra, 765 F. App'x at 501 (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)). The issue is whether the check box form is supported by medial evidence in the record.

39. In Halloran, the Second Circuit held that the ALJ's opinion denied benefits without possibly developing the administrative record and failed to apply the treating physician rule despite the check box form by a treating physician, 362 F.3d at 31-32.

40. These form assessments (regardless of their format) were not supported by Dr. Sarakanti's contemporaneous progress notes where the doctor found Plaintiff's attention and concentration was good (R. at 395-96, 829-30; Docket No. 11, Def. Memo.

at 20). Plaintiff stopped treatment in May 2017 to work construction jobs (R. at 825; Docket No. 11, Def. Memo. at 20).

41. In sum, the ALJ had substantial evidence to support the evaluation of the mental opinions. Plaintiff's objections to the ALJ's consideration of the mental opinions leading to the mental RFC is rejected; his Motion for Judgment on the Pleadings on this ground (Docket No. 10) is denied.

42. As for Plaintiff's physical RFC, he contends that the ALJ gave little or partial weight to medical opinions in the record, thus the physical RFC lacks substantial evidence (Docket No. 10, Pl. Memo. at 27). Plaintiff argues that the ALJ rendered the RFC without tethering it to the evidence of record while giving little weight to the medical opinions (id. at 28). "By affording only partial and little weight to the only medical opinions in the record assessing Plaintiff's physical impairments, the ALJ created a gap as to Plaintiff's" RFC (id., citing Nanartowich v. Berryhill, No. 17CV6096, 2018 WL 2227862, at *10 (W.D.N.Y. May 16, 2018) (Payson, Mag. J.)).

43. Defendant argues that the physical RFC is supported by substantial evidence. While Plaintiff's medical record has multiple musculoskeletal impairments, it "overall reflected relatively modest findings, mostly stable symptoms, and adequate functioning with fairly routine and conservative management" (Docket No. 11, Def. Memo. at 25). Defendant further argues that the ALJ did not need to rely on a medical opinion to determine the RFC (id. at 29). The ALJ satisfies his duty by considering the opinions (id. at 29-30, citing Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary Order)).

44. The ALJ and the parties considered opinions from four medical sources and a consultative examiner. Just prior to his disability application, on November 25, 2014,

Dr. Lorinda Parks treated Plaintiff and reported in a county employment assessment that he was unable to perform activities for three months, requiring evaluation for traumatic brain injury and learning disability (R. at 340). Plaintiff's chief complaints were headaches and learning disabilities, PTSD, injury of rotator cuff, ADHD, and high cholesterol (R. at 340, 341). Dr. Parks noted Plaintiff's rotator cuff and shoulder pain and slow mental functioning (R. at 342). She opined that Plaintiff was "very limited" (defined in the evaluation form as 1-2 hours) in seeing, hearing, and speaking (R. at 342).

45. The ALJ gave partial weight to Dr. Parks' opinion concluding that there was no substantial evidence for communication restrictions (R. at 426). The ALJ gave weight to the findings that showed Plaintiff did not have significant physical limitation (R. at 426).

46. Consultative examiner Dr. Harbinder Toor examined Plaintiff twice. On February 9, 2015, Dr. Toor assessed Plaintiff for his disability application, observing that Plaintiff had mild to moderate limitation standing, walking, sitting, bending, and lifting, reaching, moderate limitation in fine motor activities with his hands (R. at 275).

47. The ALJ gave partial weight to Dr. Toor's 2015 opinion because it contained vague terms and based upon Plaintiff's subjective complaints (R. at 426). The limitations found by Dr. Toor do not reflect significant clinical work-up or ongoing treatment (R. at 426).

48. Dr. Toor examined Plaintiff in August 2016 for a county employment assessment (R. at 320). There, Dr. Toor noted that Plaintiff had a history of gunshot wound injury and head injury in the 1990s with off and on headaches (R. at 320). Dr. Toor examined Plaintiff and observed his excruciating pain in the lower back, left leg, and left shoulder, tingling and burning in his left leg, and Plaintiff declined to heel and toe walk

and squat (R. at 321). Dr. Toor found Plaintiff was very limited (again 1-2 hours) in pushing, pulling, and bending, and stairs and other climbing, moderately limited (2-4 hours) in walking, standing, and sitting (R. at 322). Dr. Toor concludes that Plaintiff is unable to participate in any activities except treatment and rehabilitation (R. at 322).

49. The ALJ gave Dr. Toor's second opinion little weight (R. at 427). Unlike the 2015 opinion, the ALJ found the 2016 opinion made higher degree of restriction than is supported by objective evidence of record, imaging studies, and examination findings (R. at 427).

50. Physician Assistant Roger Chapman treated Plaintiff on September 15, 2016, for back pain with left side radiculopathy (R. at 310-11). Plaintiff returned to Chapman complaining that pain medication was not working (R. at 310; Docket No. 10, Pl. Memo. at 19). Mr. Chapman reported on the county employment assessment form that Plaintiff suffered from back and shoulder pain, that moderately limited him for pushing, pulling, bending, and lifting (more than 30 pounds) (R. at 315-18, 318, 316, 317).

51. The ALJ gave partial weight to Chapman's opinion, applying Plaintiff's treatment record of conservative management and relatively modest physical examination findings (R. at 427). The ALJ found that Chapman's opinion showed Plaintiff was largely intact capacity for more significant activities but concluded the lifting restrictions were not supported by the record (R. at 427).

52. In Nanartowich, supra, 2018 WL 2227862, at *10, the ALJ there accorded little weight to the two medical sources but "nothing suggests that the ALJ accounted for the limitations identified by these physicians in formulating the RFC," id. at *9. The ALJ

thus did not rely upon any medical opinions and the ALJ used his lay opinion to determine that claimant's RFC, 2018 WL 2227862, at *10.

53. Unlike Nanartowich, there is no gap in the record here from the ALJ's weighing of the medical opinions. As Defendant observed (Docket No. 11, Def. Memo. at 29-30), the ALJ did not need to select an opinion to support the RFC, provided substantial evidence supports the finding.

54. Plaintiff's objections to the physical RFC finding are rejected. His Motion for Judgment on the Pleadings (Docket No. 10) on this ground is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:   June 2, 2022
         Buffalo, New York

                                                  s/William M. Skretny
                                                  WILLIAM M. SKRETNY
                                                  United States District Judge